UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TAN VAN LE,                         )
                                    )
                Petitioner,         )        Case No. 1:05-cv-26
                                    )
v.                                  )        Honorable Robert Holmes Bell
                                    )
JOHN PRELESNICK,                    )
                                    )        **REPORT AND RECOMMENDATION**
                Respondent.         )
_____)

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner was convicted in a jury trial of armed robbery, MICH. COMP. LAWS § 750.529, and home invasion, first-degree, MICH. COMP. LAWS § 750.110a(2). He was sentenced on April 17, 2001, in the Kent County Circuit Court to concurrent prison terms of 18-to-90 years on the armed robbery conviction and 8-to-20 years on the home invasion conviction. The Michigan Court of Appeals affirmed both the conviction the sentences on direct review, and the state Supreme Court denied leave to appeal on January 27, 2004.

Petitioner filed a timely habeas corpus petition on January 10, 1005, raising the same ten issues that were reviewed and rejected in the state courts. Those issues, as set forth in Attachment C to the *pro se* habeas corpus petition, are as follows:

I.      THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED
        DEFENDANT'S CONTINUING REQUEST FOR SEPARATE JURIES
        WHEN HAVING A JOINT TRIAL PREJUDICED THE SUBSTANTIAL
        RIGHTS OF DEFENDANT LE VIOLATING MRC 6.212(C).

II.     REPEATED IMPROPER QUESTIONING BY THE PROSECUTOR TO THE DEFENSE'S MAIN ALIBI WITNESS REGARDING THE WITNESSES ALLEGED PAYMENT OF DEFENSE COUNSEL'S RETAINER FEE DEPRIVED THE DEFENDANT OF A FAIR TRIAL

III.    THE PROSECUTOR'S IMPROPER ARGUMENT IN CLOSING THAT THE DEFENSE POSSESSED THE ORIGINAL DIARY OF A WITNESS IMPROPERLY SHIFTED THE BURDEN OF PROOF TO THE DEFENSE BY IMPLYING THAT DEFENDANT SHOULD HAVE PRODUCED EXCULPATORY EVIDENCE.

IV.     THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED DEFENSE COUNSEL'S REQUEST FOR A DELAY WHEN THE PROSECUTOR WAS ALLOWED TO CONTINUE CROSS EXAMINING AN ALIBI WITNESS WITH TAPE RECORDINGS THAT WERE DELIVERED TO THE DEFENSE COUNSEL AT THE BEGINNING OF THAT DAY'S TESTIMONY.

V.      THE PROSECUTOR AND POLICE WITNESS IMPERMISSIBLY AND WRONGLY PREJUDICED THE JURY AGAINST THE DEFENDANT BY PROFILING THE DEFENDANT AS AN ACTIVE GANG MEMBER IN THE ASIAN PRIDE GANG.

VI.     THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GIVE SUA SPONTE THE CAUTIONARY INSTRUCTION CJI 5:2:01 CONCERNING AN ACCOMPLICE WHO RECEIVED A DEAL TO TESTIFY.

VII.    THE COERCED TESTIMONY OF THE STATE'S WITNESS WAS IMPERMISSIBLY BOLSTERED BY THE PROSECUTOR VOUCHING FOR THE TRUTHFULNESS OF HIS WITNESS AND THE FAILURE OF THE PROSECUTOR TO IMMEDIATELY INFORM OF THE DEAL THE WITNESS WAS RECEIVING TO TESTIFY.

VIII.   THE DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO HAVE COUNSEL AT PHOTO LINEUPS, AND SEVERELY PREJUDICED BY HIGHLY SUGGESTIVE IDENTIFICATION PROCEDURES, NO PHYSICAL LINE UPS, AND IN COURT IDENTIFICATIONS.

IX.     THE CUMULATIVE EFFECTS OF THE ERRORS SHIFTED THE BURDEN OF PROOF, VIOLATED THE DEFENDANT'S RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL.

X.    THE 18 TO 90 YEAR SENTENCE IMPOSED ON THE DEFENDANT, AS
      A  FIRST  TIME  OFFENDER,  SHOCKS  THE  CONSCIENCE  AND
      VIOLATES THE PRINCIPLES OR PROPORTIONALITY.

Respondent has filed an answer to the petition, raising the defense of procedural default as to some

of the claims, arising from the decision of the Michigan Court of Appeals to decline appellate review

for lack of an objection in the trial court.  Respondent contends that the remaining claims do not

provide grounds for habeas corpus relief.  Chief Judge Robert Holmes Bell has referred this matter

to me for review of the record and the submission of a report and recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts.

Upon review of the record and the submissions of the parties, I conclude that grounds VII and VIII

are barred by procedural default, which petitioner has not attempted to excuse by a showing of cause

and prejudice.  I conclude that the remaining grounds for relief lack substantial merit.  I therefore

recommend that the petition be denied in its entirety.

## State Court Proceedings

The state-court prosecution arose from a home invasion and burglary that occurred

in the City of Kentwood, Michigan, on August 9, 1999.  At about 7:00 a.m. on that day, petitioner

and his co-defendant, Nguyen Chu, forced their way into a house owned by Tuong Pham but

occupied at the time of the robbery only by women and children.  When the doorbell rang, one of

the women, Hein Pham, opened the door and three men, armed with a gun and a knife, pushed their

way in.  One of the assailants held a gun to Pham's neck.  The assailants bound and gagged the four

adult women in the house and robbed them of approximately $132,000 in cash and jewelry.  When

police arrived, they found the women with their hands bound, and one had been cut on her arm and neck.

Police investigation focused on a neighbor, Dung Nguyen, who eventually confessed that he had helped the other three men plan the home invasion and that the Pham family had large amounts of cash and jewelry in their home. He also admitted that he allowed the three men to use his car and that they gave him some of the family's jewelry to compensate him for his role in the robbery. Nguyen told the officers that the three burglars were from out of town and that they left for Chicago immediately after the robbery. Petitioner was eventually arrested in Phoenix, Arizona. The co-defendant, Nguyen Chu, was also apprehended. At the time of the trial, the third alleged robber, Trung Duc Lu, had not been arrested. Dung Nguyen was allowed to plead guilty to conspiracy to commit armed robbery and conspiracy to commit home invasion, in exchange for a sentencing recommendation.

Petitioner and his co-defendant were tried before the Kent County Circuit Court, Honorable Donald A. Johnston presiding, beginning on January 29, 2001. The jury trial consumed twelve days. (*See* Trial Transcript (TT), docket #'s 10-24). Each of the adult victims testified, with the help of an interpreter. Tien Kha Luu, one of the women living in the house, testified that she was awakened by a man pushing a knife towards her. He took her upstairs, tied her up, gagged her, and put a gun to her head. He then put a knife to her throat. (TT IV, 6, docket # 13). She identified the defendants as two of the assailants. (*Id.*, 8-9). Tsuy Tran, the wife of the homeowner Mr. Pham, identified both defendants as the men who broke into her home and assaulted her. (TT IV, 56-57). Hein Keim Pham, Mr. Pham's mother, testified that when she answered the door, an assailant pushed his way into the house and held a gun to her neck. (TT VI, 5-6, docket # 15). She testified that the

-4-

jewelry taken from her was worth approximately $120,000.00.  (*Id.*, 10).  She could not, however, identify any of her assailants.

Tho Thi Nguyen, Mr. Pham's mother-in-law, went to the house to borrow some milk. She knocked on the door and was let in.  Once she entered, she felt a gun at her neck.  The men took two bracelets and a diamond ring from her.  (TT VI, 25).

Dung Chi Nguyen testified pursuant to a plea agreement.  He testified that he went to the Orbit Room (a nightclub) with the defendants and two other men on the night before the robbery.  At that time, he saw all of their identifications.  (TT VI, 62-64).  Three of the men talked about an abortive attempt to rob a jewelry store on the south side of Grand Rapids.  The witness then told the men about large amounts of cash and jewelry at the house of Tuong Pham, but claimed he was "very drunk" when he did so.  (TT VI, 69).  He allowed the other men to use his car for the robbery.  Nguyen positively identified petitioner and Chu as the men who committed the home invasion and robbery.  He further testified that petitioner had a distinctive tattoo on his back, which he saw when the men were together at a Motel 6.  (TT VI, 58-59).

Nguyen's testimony was corroborated by Linh My Vuong.  At the time of the offense, Vuong and Dung Nguyen were just friends, although she became his girlfriend thereafter.  (TT VIII, 80, docket # 17).  Dung called her and told her to come to a Motel 6, where she met Dung and several other men.  (*Id.*, 81).  Ms. Vuong identified both defendants as being present at the motel prior to the robbery.  (*Id.*, 85).  She saw knives present in the motel room at that time.  (*Id.*, 88).  She returned to the motel the next morning, after the robbery had occurred, and again saw knives and a hammer.  (*Id.*).  Nguyen and the other three men were present.  She saw rings, necklaces, and

bracelets on the bed.  (*Id.*, 89).  They told her to take some jewelry, but she did not do so.  (*Id.*).  The remainder of the prosecution's case consisted of testimony of police officers.

Petitioner asserted the defense of alibi and called several witnesses in support of that defense.  The principal alibi witness was Aivi Nguyen, who testified that both defendants were with her at the time of the robbery.

The jury found both defendants guilty as charged.  They appeared before Judge Johnston for sentencing on April 17, 2001.  (Sentencing Transcript (ST), docket # 25).  Addressing petitioner before sentencing, Judge Johnston made the following remarks:

> This is a fairly outlandish and shocking criminal episode.  My information is that shortly after the owner of the home in question, Mr. Toung Pham, left his home in the 400 block of Crossman (sic), Southeast, at about seven o'clock on the morning of August 9th, 1999 to go to his place of employment, you and Mr. Chu, your co-defendant, forced your way into the house, which was then occupied only by women and children, and robbed Mr. Pham's wife, Tsuy Tran, my pronunciation I'm sure is improper, and his mother, Hien Pham, and his mother-in-law, Tho Nguyen, and also his aunt, Tien Luu, at gunpoint and at knife point, stealing a fortune in cash and jewels.
>
> It seems to me that the circumstances are quite aggravated.  Again, you burst in to some people in the privacy of their own home and where they expect to be safe and secure, and you did it at a time when the man of the house had left so whatever means of defending themselves was largely taken away and nothing but women and children were in the home.
>
> When we talk about a fortune in cash and jewels, the amount of property taken totals a hundred thirty-two thousand five hundred twenty-one dollars.  No mean sum.  Evidently the victims had been set up by their neighbor, one Dung Nguyen, who was a friend of your co-defendant, Mr. Chu, who pointed out the victim's house and loaned his car for you and Mr. Chu to use in the crime, also explaining that these people generally had a lot of valuables around their home.  It also occurred during the course of the trial that in effect an alibi witness, Mr. Chu's girlfriend [Aivi Nguyen], was offered on your behalf, testified in a manner which was obviously not true and I believe she has subsequently been charged with perjury.

(ST, 4-5).  The court imposed a sentence near the top of the state sentencing guidelines.

-6-

Petitioner, represented by new counsel, appealed as of right to the Michigan Court of Appeals.  Counsel's brief raised the following four issues for review:

1.      Abuse of trial court discretion in denying a request for separate juries. This issue was presented as a pure question of state law under Mich. Ct. R. 6.121. No federal constitutional issue was raised.

2.      The prosecutor committed misconduct by repeatedly questioning the defense's main alibi witness regarding the witness's alleged payment of defense counsel's retainer.

3.      The prosecutor committed misconduct in closing argument by implying that petitioner should have produced exculpatory evidence, thereby shifting the burden of proof.  The issue was argued as a matter of state law, with no constitutional claim asserted.

4.      The trial court abused its discretion in denying defense counsel's request for an adjournment to allow counsel to review tapes produced during the middle of trial.  In addition to raising state-law claims, appellate counsel asserted that the prosecutor abridged petitioner's right to present a defense, his right to a fair trial, and his rights to the effective assistance of counsel under the federal Constitution.

(Defendant/Appellant's Brief, found in Court of Appeals Record, docket # 26).

Petitioner was allowed to file a *pro se* brief raising six further claims:

1.      Unconstitutional "racial profiling" of petitioner as an Asian Pride gang member.

2.      The trial court erred by failing to *sua sponte* give a cautionary instruction concerning accomplice testimony.

3.      Prosecutorial misconduct arising from vouching and failure to correct false testimony by Dung Nguyen.

4.      Denial of petitioner's Sixth Amendment right to have counsel present at a photo lineup.

5.      Cumulative error.

6.      Disproportionate sentencing under the state sentencing guidelines.

(Appellant's *Pro Per* Brief on Appeal, found in Court of Appeals Record, docket # 26).

By unpublished, *per curiam* opinion issued August 12, 2003, the Michigan Court of Appeals rejected all claims raised by petitioner or his counsel and affirmed the conviction and sentence.  With regard to the claim of error arising from the denial of separate juries or separate trials, the court found no abuse of discretion.  The court found that neither defendant clearly, affirmatively and fully demonstrated that any substantial right would be prejudiced by a joint trial or that separate juries were necessary to alleviate prejudice.  "Defendants did not implicate one another as part of their defenses.  Rather, they presented virtually identical alibi defenses, which were not irreconcilable or mutually exclusive.  Also, there is no potential for jury confusion because the evidence against the two defendants was the same."  (Op., 2).  The court rejected petitioner's claim of prosecutorial misconduct arising from the cross-examination of Aivi Nguyen concerning her hiring and paying for counsel for co-defendant Chu and petitioner, finding that the line of questioning was relevant to the question of the witness's bias.  "In this case, the prosecutor's questioning demonstrated Aivi's self-interest in the case. She was involved in hiring and paying for the defendants' counsel and was the main alibi witness.  Because the prosecutor's questioning was an appropriate explanation of Aivi's bias and credibility, there was no misconduct."  (Op., 3).

The court also rejected petitioner's claim of prosecutorial misconduct arising from the comment in final argument concerning the defense's failure to produce a diary of Aivi Nguyen. The court found that petitioner implied, through questioning at trial, that the alibi defense was corroborated by Aivi's diary and appointment book, which Aivi willingly surrendered to the police. The evidence showed, however, that the appointment book was altered.  The prosecutor argued that the alterations could not be seen on the copies, but could be seen on the originals.  "She further

argued that, if the books really corroborated the alibi, they could have been produced.  She noted that the books were in the possession of defense counsel.  At no time did the prosecutor argue or suggest that [petitioner] had to offer evidence of his innocence."  The court found that, reviewed in context, the challenged arguments were not improper.  (Op., 4).

The court rejected the claim that the trial court abused its discretion when it denied a request for continuance to allow counsel to review audio tapes, which were used during the cross-examination of Aivi Nguyen.  The court found that the issue had not been preserved for appellate review "because neither defendant actually requested an adjournment or continuance before the cross-examination continued."  (Op., 4).  Counsel only asked for a chance to review the tape before redirect examination of the witness, which the court ultimately granted.  In any event, the court found no prejudice.  "[Petitioner] cannot demonstrate the requisite prejudice.  While he repeatedly argues that the denial of a continuance deprived him of adequately prepared counsel, he fails to articulate how the prosecutor's continued cross-examination and his counsel's conduct during that examination were affected because the tapes were not reviewed beforehand."  (Op., 5).

The court then turned to petitioner's *pro se* issues.  With regard to the allegation of racial profiling, the court found that the jury did not hear testimony or argument that indicated, suggested, or implied that petitioner was in any gang or that the robbery was gang related.  It rejected petitioner's argument as being based on a misinterpretation or misreading of the record.  With regard to error arising from the court's alleged failure to give cautionary instructions concerning accomplice testimony, the court found that "the instructions in question were actually given to the jury."  (Op., 5).  Addressing the alleged prosecutorial misconduct arising from vouching and failing to correct the record, the court again found that the issues were not preserved with an appropriate objection at trial.

The court therefore reviewed only for plain error. The court found that the prosecutor did not vouch for Dung Nguyen's testimony, but merely stated in opening that the jury would hear testimony that the police investigated and corroborated Nguyen's story. (Op., 5). The court found no evidence in the transcript indicating that the prosecutor had presented false testimony from Nguyen. On this basis, the court found no plain error.

Turning to the Sixth Amendment argument arising from the lack of counsel at a pre-indictment photographic lineup, the court again found the issue was unpreserved for appellate review. In reviewing for plain error, the court found the issue meritless, because the lineups were held shortly after the robbery and before petitioner was in custody. "A defendant is generally not entitled to counsel at a pre-custodial, investigatory photographic lineup." (Op., 6). The court further noted that at the time of the lineup, petitioner had fled Michigan. Finally, the court rejected the allegation of cumulative error, and found that the sentence was appropriate under the state guidelines. (Op., 6, 7).

Petitioner, acting *pro se*, filed a delayed application for leave to appeal to the Michigan Supreme Court. In support of his application, petitioner submitted the two briefs filed in the state Court of Appeals. By standard order issued January 27, 2004, the Michigan Supreme Court denied leave to appeal. (*See* Michigan Supreme Court record, docket # 27).

On January 10, 2005, petitioner initiated the present habeas corpus action. Attachment C to his *pro se* petition asserts the same ten grounds for relief raised in the state appellate courts. Respondent's answer raises the defense of procedural default on all claims that the state Court of Appeals found were unpreserved for appellate review. Although advised of his opportunity

to do so (*see* Order, docket # 29), petitioner has not filed a reply to respondent's answer and therefore has not attempted to show cause and prejudice excusing his default.

## **AEDPA Standard**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted). If a state court adjudicated the claim, AEDPA standards must be applied. 28 U.S.C. § 2254(d). Thus, even in instances where a state court has not clearly articulated its reasoning, if the circumstances suggest that the state court actually considered and decided the issue, the review is not *de novo,* but is limited by the deferential AEDPA standards. *See Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 1032 (2006); *Onifer v. Tyskiewicz*, 255 F.3d 313, 316 (6th Cir. 2001); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). *De novo* review is restricted to instances where the state court did not address the merits of a claim. In that limited set of circumstances,  "there are simply no results, let alone reasoning, to which [the habeas] court can defer." *McKenzie v. Smith*, 326 F.3d 721,727 (6th Cir. 2003), *cert. denied*, 540 U.S. 1158 (2004); *see Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir.), *cert. denied*, 126 S. Ct. 744 (2005).

The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning.  A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts."  *Bell v. Cone*, 535 U.S. at 694 (citations omitted).  A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.  *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d at 655-56.

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams*, 529 U.S. at 412; *Bailey*, 271 F.3d at 655.  This court

-12-

may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."); *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d at 943. The AEDPA standard includes an important temporal limitation. "'[C]learly established Federal law as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003) (quoting *Williams*, 529 U.S. at 412); *see Stuart v. Wilson*, No. 05-3092, ___ F.3d ___, 2006 WL 758348, at * 8 (6th Cir. Mar. 27, 2006). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d at 318; *see Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004) (describing the issue of whether the law was clearly established by Supreme Court precedent as a "threshold inquiry").

Regardless of the subsection of 2254(d) relied on by the petitioner, AEDPA requires heightened respect for state factual findings. 28 U.S.C. § 2254(e 1); *see Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence 28 U.S.C. § 2254(e)(1); *Payne v. Bell*, 418 F.3d 644, 663-64 (6th Cir. 2005); *Lancaster*, 324 F.3d at 429. This presumption of correctness is accorded to findings of state appellate courts,

-13-

as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Biros v. Bagley*, 422 F.3d 379, 386 (6th Cir. 2005); *Abdus-Samad v. Bell*, 420 F.3d 614, 620 (6th Cir. 2005).

**Discussion**

**I.      Failure to Grant Separate Trials**

Petitioner's first claim for habeas corpus relief is that the trial court abused its discretion by refusing to grant him and his co-defendant separate trials or at least separate juries.  As noted above, petitioner presented this claim to the state courts as one arising purely under the Michigan Court Rules and common law.  Petitioner did not cite in the state courts, nor does he cite in this court, any holding of the United States Supreme Court establishing the right to separate trials or juries in the circumstances of the present case.

The Supreme Court has delineated few constitutional rules in this area.  The Court has held that separate trials are constitutionally required where the prosecution intends to introduce the confession of a co-defendant which incriminates another defendant.  *See Bruton v. United States*, 391 U.S. 123, 137 (1968).  The court has further held that the Constitution does not require severance if the co-defendant's out-of-court statement does not directly implicate the defendant. *Richardson v. Marsh*, 481 U.S. 200, 208-09 (1987).  The *Bruton* rule is designed to vindicate a defendant's right to confront his accusers, so separate trials are not necessary when the co-defendant is subject to cross-examination at trial.  Beyond enunciating this rule, the Supreme Court has left the matter of severance to state law and the trial judge's discretion.[1]  The Court remarked in *United*

_____

[1] The decision in *Zifiro v. United States*, 506 U.S. 534 (1993), is sometimes cited as establishing constitutional standards for separate trials, but it plainly did not.  *Zifiro* was decided under Rule 14 of the Federal Rules of Criminal Procedure and involved no constitutional issue.  Nevertheless, the decision of Judge Johnston to deny separate trials would be proper, even if *Zifiro*

-14-

*States v. Lane*, 474 U.S. 438 (1986), that the denial of a motion for severance does not in and of itself implicate constitutional rights. The Constitution is implicated only when the failure to sever trials is so prejudicial that it imperils a defendant's right to a fair trial. 474 U.S. at 446 n.8. Consequently, a "petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendants bears a very heavy burden." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001).

In denying the motion for severance, the trial judge observed that the case did not present any *Bruton* issues or mutually exclusive, inconsistent defense theories. (TT I, 7-9). On direct review, the state Court of Appeals found the lack of prejudice, remarking that defendants presented virtually identical alibi defenses which were not irreconcilable or mutually exclusive. The court further found no potential for jury confusion, because the evidence against the two defendants was the same. (Op., 2). These findings of fact are entitled to a presumption of correctness, in the absence of clear and convincing evidence. 28 U.S.C. § 2254(e).

Petitioner has not cited any holding of the United States Supreme Court that calls into question the reasoning of the state trial court or Court of Appeals denying separate trials. Nor has petitioner demonstrated that the decision of the state courts represents an unreasonable application of clearly established Supreme Court authority. Petitioner's first claim for habeas corpus relief must therefore be rejected.

_____

were applied.

-15-

## II.      Prosecutorial Misconduct - Improper Questioning

Petitioner's second claim for habeas corpus relief arises from the prosecutor's questioning of Aivi Nguyen, an alibi witness, concerning her involvement in hiring and paying for counsel for both petitioner and his co-defendant, Nguyen Chu.  On direct review, the Michigan Court of Appeals found that the questioning was "relevant to the issue of the witness's bias and was intended to demonstrate the witness's self-interest in the case, an issue that is 'almost always relevant.'"  (Op., 3) (quoting *People v. Layher*, 631 N.W.2d 281, 285 (Mich. 2001)).  The appellate court therefore found no misconduct arising from this line of questioning.

On habeas corpus review, claims of prosecutorial misconduct are reviewed deferentially.  *See Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003), *cert. denied*, 543 U.S. 842 (2004).  To be grounds for habeas corpus relief, the alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  Even if the prosecutor's conduct was improper or "universally condemned," the habeas court can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair.  *Bowling*, 344 F.3d at 512.  The first question for the habeas court is whether the prosecutor's statement was misconduct at all.  *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir.), *cert. denied*, 126 S. Ct. 163 (2005).  If so, the court is to examine four factors in determining whether the impropriety was "flagrant":  (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial.  *Bates*, 402 F.3d at 641; *see Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000).  Under AEDPA, this bar is heightened by the deference that the

-16-

habeas court must give to the Michigan Court of Appeals' determination of the prosecutorial misconduct claims.  *Bowling*, 344 F.3d at 513.

Petitioner's habeas corpus claim falters on the first inquiry, as the prosecutor's questions were not misconduct at all.  Petitioner points to no holding of the United States Supreme Court condemning questions even remotely similar to those posed by the prosecutor in this case. The Court has never found misconduct arising from a prosecutor's cross-examination on a central issue such as witness bias.  Petitioner has not demonstrated an error of state law, let alone one that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  His second habeas corpus claim must therefore fail.

### III.  Prosecutorial Misconduct - Final Argument

Petitioner's third claim for habeas corpus relief arises from comments made by the assistant prosecutor during final argument concerning petitioner's failure to produce the original appointment book of the defense alibi witness, Aivi Nguyen, in support of the alibi defense.  The witness's appointment book contained exonerating entries presented in support of the alibi defense, but there was testimony that the book had been altered after Mr. Chu's arrest.  In final argument, the assistant prosecutor suggested that the original appointment book would put to rest any issue of alteration, but that it had not been introduced into evidence.   "Now we don't have the real appointment book or the real diary.  I'm told Mr. Woods [petitioner's attorney] has that.  They haven't introduced it in trial whatsoever."  (TT XII, 32, docket # 24).  Defense counsel immediately objected, asserting that the argument shifted the burden of proof to defendant.  The court determined

that the location of a particular item of evidence was worthy "of at least a passing comment." (TT XII, 33). The court then immediately addressed the burden of proof issue. "The burden of proving the case at all times remains on the prosecuting attorney." (*Id.*). In final argument as well, the court delivered the standard jury instructions on presumption of innocence, burden of proof, and the lack of any burden on the defendant. (TT XII, 114-15, 125).

On direct appeal, the Michigan Court of Appeals determined that the challenged argument was a proper comment on the alibi theory offered by both defendants. Citing Michigan Supreme Court authority, the Court of Appeals observed that the prosecutor's comment on the validity of an alternative theory of the case advanced by the defendant cannot be deemed as shifting the burden of proving innocence to the defendant. "Although a defendant has no burden to produce any evidence, once the defendant advances evidence or a theory, argument on the inferences created does not shift the burden of proof." (Op., 4) (quoting *People v. Reid*, 592 N.W.2d 767, 777-778, (Mich. Ct. App. 1999)). The appellate court determined that the prosecutor's argument was a fair comment on the evidence and observed that the prosecutor never argued or suggested that petitioner was required to offer evidence of his innocence. (*Id.*).

The decision of the state Court of Appeals, rejecting petitioner's challenge to the propriety of the prosecutor's argument, is not contrary to or an unreasonable application of any holding of the United States Supreme Court. Certainly, the Court has emphasized the constitutional requirement that the state prove every element of the offense beyond a reasonable doubt and has struck down attempts by the states to shift the burden of persuasion to the defendant to disprove statutory elements of the offense. *See, e.g., Patterson v. New York*, 432 U.S. 197, 212-16 (1977). On this basis, the court has disapproved jury instructions shifting the burden of proof, or having the

-18-

tendency to do so.  *See Sandstrom v. Montana*, 442 U.S. 510, 524 (1979).  Neither the trial court nor the prosecutor ran afoul of any of these constitutional prescriptions in the present case, however, as the jury was properly instructed concerning the burden of proof and the prosecutor never stated or implied that the burden shifted to the defendant on any issue.  The challenged argument was merely a response to petitioner's theory of defense and commented on an evidentiary gap in defendant's proofs.  The state Court of Appeals determined that this comment was proper and did not have the effect of shifting the burden of proof.  The challenged statement was not improper, was not likely to mislead the jury, was isolated, and was immediately addressed by the trial court with an appropriate cautionary instruction.  *See Bates*, 402 F.3d at 641.  Review of the decision of the Michigan Court of Appeals under the AEDPA standard therefore requires rejection of petitioner's claim of prosecutorial misconduct.

### IV.     Denial of Request For Continuance

Petitioner's fourth claim for habeas corpus relief also arises from the testimony of the defense alibi witness, Aivi Nguyen.  Defendants presented the direct testimony of Ms. Nguyen on Thursday, February 8, 2001.  (*See* TT IX, 120-165, docket # 18).  Late in the day, the assistant prosecutor began cross-examination.  During the course of cross-examination, the assistant prosecutor revealed the existence of an undercover audio tape of Ms. Nguyen.  As soon as the existence of the tape was disclosed, the court adjourned trial for the day, until 9:30 a.m. on Friday, February 9.  (TT IX, 202-03).  At the beginning of proceedings on Friday morning, counsel for co-defendant Nguyen Chu moved to exclude the tapes under the state eavesdropping law, but the court denied relief.  (TT X, 6-11, docket # 20).  Counsel for Mr. Chu also complained that he had just

received five audio tapes that morning and had not had an opportunity to review them.  (*Id.*, 11).

The court observed that counsel would have the entire weekend to review the tapes, especially

because the examination of witness Aivi Nguyen would not be concluded until Monday.  The court

further offered to have Ms. Nguyen "brought back to be reexamined after you listen to all these

tapes."  (*Id.*, 12).  Counsel for petitioner said nothing with regard to the tapes, and neither attorney

asked for a continuance of proceedings.  The prosecutor finished cross-examination of witness

Nguyen, and Chu's counsel renewed his request to hear the tapes before engaging in redirect.  At that

point, counsel for petitioner joined in the request, which the court granted.  (*Id.*, 45).  The trial judge

adjourned court for the day, informing the jury that counsel would be allowed to review the tapes

over the weekend.  (*Id.*, 47).  When court reconvened on Monday, February 12.  Mr. Chu's counsel

acknowledged that the assistant prosecutor should be allowed to continue her examination.  (TT XI,

2, docket # 22).  The assistant prosecutor did so, and then counsel for co-defendant Chu performed

his redirect examination.  (*Id.*, 18-22).  Counsel for petitioner had no questions.  (*Id.*, 22).

On direct appeal, the state Court of Appeals reviewed this record and determined that

neither defendant had preserved an issue for appellate review "because neither defendant actually

requested an adjournment or continuance before the cross-examination continued."  (Op., 4).  The

court noted that defendant Chu's attorney asked for an opportunity to review the tapes before redirect

examination, which the court allowed.  Reviewing the issue for plain error, the court determined that

neither defendant had demonstrated the requisite prejudice arising from any implicit request for an

adjournment, because the petitioner "had not shown that the denial of a continuance, after the

production of the tapes, but before the prosecutor's continued cross-examination, prejudiced the

outcome of his case."  (Op., 5).

Petitioner has not cited any Supreme Court decision that might call into question the ruling of the state Court of Appeals under any of the federal theories advanced in petitioner's brief. Petitioner's Confrontation Clause argument is utterly frivolous.  The Sixth Amendment guarantees a criminal defendant's right to confront and cross-examine the witnesses *against* him.  Ms. Nguyen was petitioner's own witness, and did not present testimony against him.  The Confrontation Clause clearly has no application.  A defendant cannot invoke the Sixth Amendment right to confront nonadverse witnesses.  *See, e.g., United States v. Doddington*, 822 F.2d 818, 821 (8th Cir. 1987) (Confrontation Clause not implicated when witness was called by defense and did not testify favorably for prosecution).  Furthermore, it cannot possibly be argued that the prosecution hindered petitioner's right to the effective assistance of counsel or the right to present a defense.  The trial court afforded defense counsel the entire weekend to review the tapes in preparation for redirect examination of Ms. Nguyen.  As the state Court of Appeals found, petitioner has never articulated a reason why his attorney's effectiveness was undermined by lack of access to the tapes during the prosecution's cross-examination of Nguyen.  Finally, to the extent that the Due Process Clause might entitle a criminal defendant to an adjournment in egregious circumstances, this case does not present any such circumstances.  As noted by the state Court of Appeals, petitioner's counsel did not request an adjournment; indeed, he made no request to the trial court with regard to the audio tapes. Petitioner has not cited any holding of the United States Supreme Court that would require a state trial judge to grant an immediate, *sua sponte* continuance in the middle of the prosecutor's cross-examination, especially when the court is willing to afford defense counsel the entire weekend to review the allegedly surprising material.

Petitioner's fourth claim is not supported by any clearly established Supreme Court authority and therefore must be rejected.

## V.      Grounds V Through VIII

The remaining habeas corpus claims were raised in the state appellate court in petitioner's *pro se* brief.  Each claim is utterly insubstantial.

In his fifth claim, petitioner argues that the prosecutor was guilty of racial profiling and prejudicially portrayed him as a member of the Asian Pride gang.  On direct review, the state Court of Appeals found that the argument was based on a misreading of the record.  "The jury did not hear testimony or argument that either indicated, suggested, or implied that Le was in any gang, that he was in the Asian Pride gang, that there was a gang named 'Asian Pride,' or that the robbery was gang related." (Op., 5).  These factual findings by the state Court of Appeals, made after review of the trial court record are entitled to a presumption of correctness unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e).  Petitioner cites to nothing in the lengthy trial transcript that might undermine these factual findings, which are fatal to petitioner's claim of racial profiling or any First Amendment claim under *Dawson v. Delaware*, 503 U.S. 159 (1992) (state prohibited from admitting evidence of gang membership by defendant unless relevant to the crime committed).

Petitioner's sixth claim is that the trial court erred in failing to deliver *sua sponte* a cautionary instruction concerning accomplice testimony.  The state Court of Appeals found that this argument was meritless, because the trial court did indeed deliver such an instruction.  (Op., 5).  The trial transcript amply supports the finding of the Court of Appeals and totally undermines petitioner's sixth habeas corpus claim.  (TT XII, 120-21, docket # 24).

Petitioner's seventh claim raises prosecutorial misconduct, arising from alleged vouching for the credibility of Dung Nguyen's testimony and for failing to immediately correct Nguyen's allegedly false testimony concerning consideration received for testifying.  The eighth habeas corpus claim is that petitioner's Sixth Amendment right to counsel was abridged by the lack of counsel at the time of a photographic lineup, which took place while petitioner was out of the state and before he was either in custody or charged with any crime.  The state Court of Appeals found that petitioner had failed to preserve these issues with an appropriate objection at trial and therefore reviewed these claims only for plain error.  (Op., 5-6).

Under a long line of Supreme Court cases, an adequate and independent finding of procedural default by the state courts will also bar federal habeas review of a federal claim, unless the habeas petitioner can show "cause" for the procedural default and "prejudice attributable thereto."  *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  Federal courts "will not take up a question of federal law presented in a case 'if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'  The rule applies with equal force whether the state-law ground is substantive or procedural."  *Lee v. Kemna*, 534 U.S. 362, 374 (2002) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  The doctrine of procedural default is applicable where petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *See White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 1032 (2006).  The state may assert a procedural default when the last reasoned opinion of the state courts clearly relies on a procedural bar in refusing to consider a claim.  *Ylst v. Nunnemaker*,

-23-

501 U.S. 797, 803-05 (1991). If a petitioner is guilty of a procedural default in the state courts, the federal habeas court will only entertain the defaulted issue if petitioner bears the burden of showing cause and prejudice or can show actual innocence. *Murray*, 477 U.S. at 485; *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994).

In this case, the Michigan Court of Appeals relied on Michigan's contemporaneous objection rule in denying petitioner's claims. It is clear that the contemporaneous objection rule was well-established at the time of petitioner's trial. *See, e.g.*, *People v. Kelly*, 378 N.W.2d 365, 369 (Mich. 1985). A rule designed to arm trial judges with the information needed to rule reliably "serves a governmental interest of undoubted legitimacy." *Lee*, 534 U.S. at 385. Petitioner's failure to comply with the state's independent and adequate state procedural rule, *i.e.*, making a contemporaneous objection, caused him to default his claim in the state appellate court. Even though the Michigan Court of Appeals applied a plain-error review of the claimed errors to determine whether they affected the outcome, petitioner's failure to object is still considered a procedural default. *See White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 423 (6th Cir. 2003) ("'We view a state appellate court's review for plain error as the enforcement of a procedural default.'") (quoting *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001)).

When a petitioner has procedurally defaulted in the state courts, the federal habeas court will only entertain the defaulted issue if the petitioner can show "cause" for the procedural default and "actual prejudice" as result of the alleged federal violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006); *Rust v. Zent*, 17 F.3d at 160-61. To show cause sufficient to excuse a

failure to raise claims on direct appeal, petitioner must point to "some objective factor external to the defense" that prevented him from raising contemporaneous objections in the trial court. *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991); *Lundgren v. Mitchell*, 440 F.3d 754 (6th Cir. 2006). Petitioner has not attempted to explain his failure to object. Denial of habeas corpus relief is appropriate where, as here, the petitioner "makes no attempt to show cause and prejudice that would excuse the procedural default." *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2006); *see Casnave v. LaVigne*, No. 04-2052, 2006 WL 304581, at 8 9 (6th Cir. Feb. 9, 2006) ("Petitioner has not argued the issue of procedural default at all, therefore, this Court cannot find 'cause' nor 'actual prejudice' . . .").

Even if petitioner had shown cause, he cannot show prejudice. As noted by the state Court of Appeals, petitioner's claim of vouching is not supported by the record. In her opening statement, the assistant prosecutor did not personally vouch for the credibility of Dung Nguyen. Rather, she pointed out that his testimony would be corroborated by other evidence. (TT II, 110-13). A prosecutor is allowed to argue the evidence and reasonable inferences therefrom. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). Petitioner's contention that the prosecutor failed to correct allegedly false testimony by Nguyen concerning the consideration given to him for testifying was rejected by the state Court of Appeals as "erroneous." (Op., 6). The record clearly shows that the assistant prosecutor elicited the details of the plea agreement with Nguyen during direct examination. (TT VI, 105-06, docket # 15). Finally, petitioner's Sixth Amendment claim arising from the lack of counsel at a photo array is utterly frivolous. The Sixth Amendment right to counsel attaches only at the initiation of adversarial judicial proceedings. *See Brewer v. Williams*, 430 U.S. 387, 401 (1977); *Kirby v. Illinois*, 406 U.S. 682, 689 (1972) (plurality opinion). No Sixth

Amendment right to counsel attaches to a pre-indictment photo array by police. *United States v. Ash*, 413 U.S. 300, 321 (1973). At the time of the photo lineup, no formal proceedings had been initiated and petitioner was not in custody. Indeed, he had fled the state. His Sixth Amendment claim is therefore meritless.

In summary, I find that grounds V and VI are baseless, and that grounds VII and VIII are barred by an unexcused procedural default.

## VI.    Claims IX and X

Petitioner's final two claims require little discussion. His ninth claim for relief is that the foregoing alleged errors, considered cumulatively, somehow tended to shift the burden of proof to him and to deny him a fair trial. As none of petitioner's claims of trial error has any substance, their cumulative effect cannot justify habeas corpus relief. The Sixth Circuit has held repeatedly that habeas relief is not available under AEDPA on a theory of cumulative error. *See Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *Millender v. Adams*, 376 F.3d 520, 529 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 1645 (2005); *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002). "The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).

Finally, petitioner challenges his sentence under state principles of proportionality. Habeas relief is available only on the ground that a petitioner is being held in custody in violation of the federal Constitution or laws. 28 U.S.C. § 2254(a). A habeas court cannot release a state prisoner on the ground that the conviction or sentence violates state law. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Petitioner's claim that his sentence violates the proportionality rule arises

under the Michigan Supreme Court decision in *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1999).

*Milbourn* was decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128,

1995 WL 236677, at * 2 (6th Cir. April 21, 1995); *Friday v. Pitcher*, 200 F. Supp. 2d 725, 744 (E.D.

Mich. 2002) (Petitioner's claim that his sentence violated the proportionality principle of *Milbourn*

"does not state a claim cognizable in federal habeas corpus."), *aff'd*, 99 F. App'x 568 (6th Cir.), *cert.*

*denied*, 543 U.S. 1023 (2004).  As the *Milbourn* rule is one of state law, it is not a ground for habeas

corpus relief.  *See George v. Burt*, No. 04-74968, 2006 WL 156396, at * 5 (E.D. Mich. Jan. 20,

2006); *Adams v. Smith*, 280 F. Supp.2d 704, 717 (E.D. Mich. 2003).  The Supreme Court has

squarely held that a state prisoner is not entitled to federal habeas relief because of the alleged

violation of a state-law rule of proportionality.  *Lewis v. Jeffers*, 497 U.S. 764 (1990).

## Recommended Disposition

For the foregoing reasons, I conclude that none of petitioner's habeas corpus claims

is meritorious.  I therefore recommend that the petition be denied in its entirety.

Dated:   April 10, 2006                         /s/  Joseph G. Scoville
                                                United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within
ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All
objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file
timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474
U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030
(1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).